Robert D. SIMPSON, George Saddlemire, John F. Harrison, Gregory A. Tavano, Joseph W. Bowman, Guy A. Annunziato, Raymond J. Lutz, Robert Schnurr, Edward F. Murphy, John F. Kennedy, Francis J. Tavano, Frank R. Marrazzulla and Baremeo Hurley, Plaintiffs,

v.

UNITED STATES of America, Donald E. Rumsfeld, Secretary of Defense, United States of America, Martin R. Hoffman, Secretary of the Army, United States of America, Laverne E. Weber, Major General, United States Army, Chief, National Guard Bureau, United States of America, and State of New York, John C. Baker, Major General, New York Army National Guard, Chief of Staff to the Governor of the State of New York, Division of Military and Naval Affairs, State of New York, Defendants.

No. 75 Civ. 5462.

United States District Court,
S. D. New York.

April 6, 1979.

Townley & Updike, New York City, for plaintiffs; Kenneth J. McCulloch, Rory J. McEvoy, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendants; John M. O'Connor, Asst. U. S. Atty., New York City, Capt. Roy L. Dodson, Dept. of the Army, of counsel.

LASKER, District Judge.

The National Guard Technicians Act[1] provides that a National Guard technician, who is a full time civilian employee of the National Guard, must be a member of the National Guard, and that a technician who is separated from the Guard "shall be promptly separated from his technician employment." 32 U.S.C. § 709(b), (e)(1). The

plaintiffs are former National Guard technicians who lost their civilian employment when they were separated from the Guard pursuant to provisions of the Reserve Officer Personnel Act of 1954.[2] They sue the United States and the State of New York, the Secretaries of Defense and of the Army, the Chief, National Guard Bureau, and the head of the New York Army National Guard.

The plaintiffs contend that their separation from their civilian employment violated the Age Discrimination in Employment Act (ADEA),[3] and denied them the equal protection of the laws guaranteed by the fifth[4] and fourteenth amendments to the Constitution. They seek declaratory relief, back pay, and liquidated damages.

The defendants move for summary judgment dismissing the complaint on the grounds that it fails to state a claim under the ADEA or the equal protection component of the fifth and fourteenth amendments.[5] Plaintiffs cross-move for summary judgment granting them the relief sought in the complaint.

1. Pub.L.No.90–486, 82 Stat. 755 (1968) (codified in part as 32 U.S.C. § 709 and in scattered sections of 5, 10, 42 U.S.C.).

2. Ch. 1257, 68 Stat. 1147 (1954), *as amended.* The provisions of the Reserve Officer Personnel Act directly involved in this case are set forth more fully in note 8, *infra.*

3. 29 U.S.C. §§ 621–634. The provisions of the ADEA involved here were enacted as part of the Fair Labor Standards Amendment of 1974, which extended coverage under the ADEA to federal employees. Pub.L.No.93–259, § 28(b)(2) (codified as 29 U.S.C. § 633a).

4. The Fifth Amendment prohibits the federal government from engaging in discrimination that is "so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *accord, Vance v. Bradley,* —— U.S. ——, —— n.1, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Hampton v. Mow Sun Wong,* 426 U.S. 88, 99–100, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Schlessinger v. Ballard,* 419 U.S. 498, 500 n.3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Fullilove v. Kreps,* 584 F.2d 600, 602 n.2 (2d Cir. 1978). Equal protection analysis is the same under both the fifth and fourteenth

amendments. *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

5. Defendants also assert that the complaint must be dismissed because the plaintiffs have failed to exhaust their administrative remedies. Assuming that exhaustion is required, *see Brown v. General Services Administration,* 507 F.2d 1300, 1307–08 (2d Cir. 1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the question is which administrative route the plaintiffs were required to pursue. The ADEA prescribes resort to the Civil Service Commission, 29 U.S.C. § 633a(b), (d). Plaintiffs appealed to the Commission, which rejected their claims on the ground that their discharges were matters solely within the military realm, and not within the Commission's jurisdiction. The defendants contend that the plaintiffs were required to seek review of their discharges before the Army Board for the Correction of Military Records. The answer to this question turns on the more fundamental question whether the plaintiffs are protected by the ADEA at all in the circumstances of this case. Since we conclude that the plaintiffs have no claim under the ADEA, the exhaustion question need not be determined.

## I.

Because the National Guard is not a full-time active force, National Guard technicians are employed to meet the day-to-day administrative, training, and logistic needs of the Guard.[6] "The concept of the technician program is that the technicians will serve concurrently in three different ways: (a) perform full time civilian work in their units; (b) perform military training and duty in their units; and (c) be available to enter active Federal service at any time their units are called." S.Rep.No.1446, 90th Cong., 2d Sess. 2 (1968). Employment as a technician is conditioned on concurrent membership in the National Guard because the technician's civilian and military functions are integrated.[7] Since technicians are both civilian employees of the Guard and Guard members, they receive two salaries, they are subject (in their civilian employment) to civilian personnel regulations and (in their Guard service) to military regulations and the Uniform Code of Military Justice, and they are eligible for both civil service and military retirement benefits. They are also subject to a special liability: they lose their civilian employment if they are separated from the Guard. 32 U.S.C. § 709(e)(1).

The Reserve Officer Personnel Act governs promotion and discharge of National Guard officers. To ensure that military personnel meet proper standards, the Act embodies a system for merit promotion based on regular reviews of each officer's performance and qualifications. To ensure that the military hierarchy does not become "top heavy" while providing adequate promotion opportunities for qualified officers, the Act provides for heavy levels of attrition in higher ranks. Each of the plaintiffs was separated from the Guard pursuant to one of the attritive provisions of the Act,[8] and consequently lost his technician employment.

The plaintiffs argue that the operation of the attritive provisions of the Reserve Officer Personnel Act illegally discriminated against them on the basis of age, contrary to the Age Discrimination in Employment Act, which provides that "[a]ll personnel actions affecting employees . . . in the military departments . . . shall be made free from any discrimination based

---

**6.** See 32 U.S.C. § 709(a); H.R.Rep.No.1823, 90th Cong., 2d Sess. (1968), *reprinted in* 3 [1968] U.S.Code Cong. & Admin.News, pp. 3318, 3323.

**7.** Since the entire technician program serves the fundamental purpose of providing a constantly ready force capable of responding immediately to meet military requirements, civilian technicians are required to maintain a military position in the Guard, supplemental to their own regular civilian position.
114 Cong.Rec. 23254–55 (1968) (remarks of Sen. McIntyre on S. 3865, enacted as the National Guard Technicians Act of 1968).

**8.** Plaintiffs Harrison and Gregory Tavano were separated from the National Guard pursuant to 10 U.S.C. § 3846. Plaintiffs Simpson, Saddlemire, Bowman, Annunziato, Lutz, Schnurr, Murphy, Francis Tavano, and Hurley were separated pursuant to 10 U.S.C. § 3848. Plaintiff Kennedy was separated pursuant to 10 U.S.C. § 3851. Plaintiff Marrazzulla was not separated, and his claim has been withdrawn.
Section 3846 requires that reserve first lieutenants, captains, and majors who are twice passed over for promotion be transferred to the Retired Reserve or discharged from their appointment. Sections 3848 and 3851 provide that reserve first lieutenants, captains, majors,

and lieutenant colonels who complete twenty-eight years of service, and reserve colonels and brigadier generals who complete thirty years of service, shall be transferred to the Retired Reserve or discharged unless the Secretary of the Army authorizes their retention in active status. The Secretary

> may authorize the retention in an active status until age 60 of any officer of the Army National Guard of the United States who would otherwise be removed from an active status under [sections 3848 and 3851] and who—
>
> .   .   .   .   .
>
> (2) is employed as a technician under [the National Guard Technicians Act], in a position for which Army National Guard membership is prescribed by the Secretary.

10 U.S.C. §§ 3848(c), 3851(c). The plaintiffs who were separated pursuant to sections 3848 and 3851 applied to the Secretary for waivers under the quoted provision. Some waivers were granted to allow sufficient time for replacements to be trained, and to allow certain plaintiffs to qualify for Civil Service Retirement benefits, but no plaintiff was granted a waiver which permitted him to retain his civilian employment until age 60.

on age." 29 U.S.C. § 633a(a). Their argument is straightforward. They contend first that as civilian employees of the Guard they were employees "in the military departments," and therefore protected by the ADEA from age discrimination,[9] and second that the "personnel actions" terminating their military status pursuant to the Personnel Act, which "affected" their civilian employment because continued employment is conditioned on continued membership in the Guard, were not "free from any discrimination based on age." While the argument has first-blush appeal, further analysis demonstrates that even if plaintiffs' premises are correct, their conclusion does not follow as inevitably as they suggest.

■ Although Congress used expansive language in the ADEA ("[a]ll personnel actions affecting [specified federal employees] shall be made free from any discrimination based on age"), the question nevertheless remains whether it intended the Act's prohibition to apply to the category of personnel actions challenged in this suit. The attritive provisions of the Reserve Officer Personnel Act, by their very nature, disadvantage older soldiers to the benefit of younger ones. Whether or not they involve "discrimination based on age" within the meaning of the ADEA, there is an unavoidable tension between the policies underlying the two statutes, a tension that manifests itself in this action brought by individuals who, because of their dual status, find themselves at the intersection of the two Acts.[10]

Two reconciliations of the two statutes are plausible. On the one hand, Congress may have intended, as the plaintiffs suggest, to curtail the effects of the Reserve Officer Personnel Act when it affects civilian employment as well as military status. On the other, Congress may have intended that the ADEA not apply to determinations under the Reserve Officer Personnel Act at all, even when civilian employment, as well as military status, is at stake. If so, technicians would be protected against age discrimination in personnel actions relating to their technician employment, but not against discrimination influencing personnel actions relating to their military status, and affecting their civilian employment solely because it is conditioned on military status. For example, a technician fired "for cause" under 32 U.S.C. § 709(e)(3) as an allegedly incompetent technician could assert that his or her termination was not free from age discrimination, and could sue under the ADEA. Only when the allegedly discriminatory personnel action had its origin in the military sphere would action under the ADEA be precluded.[11]

9. Plaintiffs do not argue that uniformed members of the military fall within the rubric "employees in the military departments," and that National Guard technicians are protected by the ADEA because they are members of the military. They assert, however, that technicians are protected nonetheless because they are civilian employees of the Guard as well as Guard members. Thus, their argument differs from that of the plaintiff in *Lear v. Schlesinger*, No. 75–205 (W.D.Mo. April 14, 1978). There the court concluded that uniformed members of the military are not "employees" with the meaning of the ADEA, *id.*, slip op. at 8–14, and denied relief on that ground to a National Guard technician who presented the same claims under the ADEA as the plaintiffs here. The *Lear* court, however, did not address the argument made by the plaintiffs in this case.

10. It is clear that the attritive provisions of the Reserve Officer Personnel Act are constitutional. *See Vance v. Bradley*, —— U.S. ——, ——, ——, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Mas-sachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). In *Vance*, the Supreme Court, upholding a similar attritive scheme governing the promotion and retirement of Foreign Service officers, stated:

> Congress was intent not on rewarding youth *qua* youth, but on stimulating the highest performance in the ranks of the Foreign Service by assuring that opportunities for promotion would be available despite limits on the number of personnel classes and on the number of positions in the Service. Aiming at superior achievement can hardly be characterized as illegitimate, and it is equally untenable to suggest that providing promotion opportunities through the selection-out process and through early retirement does not play an acceptable role in the process.

—— U.S. at ——, 99 S.Ct. at 945.

11. This does not mean that action in the military sphere affecting a technician's civilian employment can never be challenged under the

■ The choice between these alternative ways of resolving the conflict between the ADEA and the Reserve Officer Personnel Act requires divination of congressional intent: did Congress intend, when it enacted the ADEA, to create a special exception for National Guard technicians to the attritive provisions of the Reserve Officer Personnel Act? We conclude that it did not.

Congress has expressed, in the ADEA, an interest in eliminating age discrimination in employment. It has also implemented, through the Reserve Officer Personnel Act, an attritive scheme designed to ensure that military personnel are highly qualified and that adequate opportunities for promotion within the military are available. To the extent that the attritive scheme discriminates against military officers on the basis of age, it conflicts with the policy of the ADEA. The question is which interest is paramount in the case of National Guard technicians: the interest in eliminating age discrimination affecting their civilian employment, or the conflicting interests in maintaining the quality of National Guard personnel and providing opportunities for advancement within the Guard's hierarchy without burdening the Guard with too many high ranking officers?

The plaintiffs do not argue that Congress intended the ADEA to cover military personnel generally,[12] and what authority there is supports the proposition that it did not.

*Lear v. Schlesinger*, No. 75–205, slip op. at 8–14 (W.D.Mo. April 14, 1978); *Hunter v. Stetson*, 444 F.Supp. 238, 239 (E.D.N.Y. 1977); *cf. Johnson v. Alexander*, 572 F.2d 1219, 1223–24 (8th Cir. 1978) (uniformed military personnel are not "employees . . . in military departments" within the meaning of § 717(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, which is analogous to 29 U.S.C. § 633a(a)); *Vance v. Arizona Army National Guard*, No. 74–329, slip op. at 3 (D.Ariz. June 18, 1975) (same). Congress' decision not to extend coverage under the ADEA to military personnel generally is evidence of its satisfaction with the scheme established by the Reserve Officer Personnel Act as a method for distinguishing the best officers from many qualified ones, and winnowing the force to provide opportunities for others to advance. Because military activity and military duty are an integral part of the technician's job, as conceived by Congress, we conclude that Congress did not intend to exempt National Guard technicians from the effects of the Reserve Officer Personnel Act. Congress did not intend to attenuate its mandate, embodied in the National Guard Technicians Act's requirement that technicians be members of the Guard, that technicians "meet all the mental and physical standards as well as professional qualifications prescribed by the military departments." S.Rep.No.1446, 90th Cong., 2d Sess. 1 (1968).[13]

ADEA. In *Hunter v. Stetson*, 444 F.Supp. 238 (E.D.N.Y.1977), a National Guard technician complained that his military rank was reduced on a military pretext after he aided a fellow technician in filing a discrimination complaint, and sought to sue under § 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), which outlaws retaliation against an employee who helps another pursue a discrimination charge. Judge Nickerson rejected the argument that the complaint should be dismissed on the ground that the military is not an "employer" within the meaning of Title VII, since he read the complaint as alleging "improper action on the part of plaintiff's *civilian* employers, i. e., exploiting their dual status as plaintiff's military and civilian superiors to pervert the military decision-making process . . . with the intent of furthering goals in the realm of civilian employment: i. e., discouraging the processing of discrimination complaints." *Id.*

at 239–40 (emphasis in original). Here, however, there is no contention that the plaintiffs were separated from the Guard for other than bona fide military reasons.

12. *See* note 9, *supra.*

13. When Congress enacted the National Guard Technicians Act, it was aware that technicians might lose their civilian employment as a result of the operation of the Reserve Officer Personnel Act:

The committee would make the following recommendations with respect to any involuntary retirement through the operation of the military and personnel laws. Normally, under the Reserve Officer Personnel Act a lieutenant colonel or colonel is eliminated from an active status at about ages 53 and 55 respectively, since they will have completed 28 and 30 years of Reserve service. Reserve

This conclusion is supported by the fact that Congress authorized the Secretary of the Army to exempt some technicians from the requirement of concurrent Guard membership. 32 U.S.C. § 709(b); H.R.Rep.No. 1823, 90th Cong., 2d Sess. 6 (1968), *reprinted in* 3 [1968] U.S.Code Cong. & Admin.News, pp. 3318, 3324. By providing this exemption for those technicians (principally secretaries, clerk-typists, and security guards, *id.*) whose jobs, in the opinion of the Secretary, are completely non-military, Congress indicated all the more clearly that in its view most technicians jobs are integrally military and should be held by individuals who meet military standards.

Moreover, Congress has made exceptions in other areas to the coverage of the ADEA in order to accommodate policies very similar to those underlying the Reserve Officer Personnel Act. In 1978, Congress amended the ADEA to extend its coverage to those aged sixty-five to seventy.[14] However, Congress chose not to raise the upper limit of coverage for certain management employees[15] out of concern for "the impact that the elimination of mandatory retirement would have on the ability of employers to assure promotional opportunities for younger workers," S.Rep.No.493, 95th Cong., 2d Sess. 7 (1977), *reprinted in* 3 [1978] U.S.Code Cong. & Admin.News, pp. 504, 510. A similar, temporary exception was made for tenured faculty of colleges and universities[16] in response to congressional concern that retention of such employees beyond age sixty-five would make it difficult "to employ younger professors, particularly women and minorities," S.Rep. No.493, 95th Cong., 2d Sess. 8–9 (1977), *reprinted in* 3 [1978] U.S.Code Cong. & Admin.News, pp. 504, 511–12. These exceptions to the coverage of the ADEA, intended to ensure employment and promotion opportunities for younger workers, support the inference that Congress did not intend the ADEA to override the attritive provisions of the Reserve Officer Personnel Act, which are designed to guarantee comparable promotion opportunities for lower ranking members of the National Guard.

Finally, the interpretation of the ADEA urged by the plaintiffs requires the repeal by implication of portions of the Reserve Officer Personnel Act, at least as they apply to National Guard technicians. "The cardinal rule is that repeals by implication are not favored." *Posadas v. National City*

---

officers who are technicians under normal circumstances would therefore lose their active National Guard membership and consequently be separated from their civilian technician job because of the requirement for a dual status. Such persons would therefore be retired within immediate civil service annuity under the involuntary separation process if they had completed 25 years of service or had reached age 50 and completed 20 years of service.

The bill, however, contains a provision which will permit the Secretaries of the Army and the Air Force on a permissive basis to retain Reserve officers who are technicians in an active military status until the age of 70, notwithstanding the operation of the Reserve personnel laws which would eliminate them because of promotion passover or length of service. The committee made this provision permissive with the result that all Reserve technician officers could remain until age 60. It is the intention of the committee, that where the officer is fully qualified to hold his military position and properly performing his technician job, he should be retained in his technician employment.

S.Rep.No.1446, 90th Cong., 2d Sess. 12 (1968). This report, however, says nothing about Congress' intent when it enacted the ADEA six years later. Moreover, the report makes a recommendation only; Congress left the ultimate decision whether to retain a technician until age 60 within the discretion of the Secretary of the Army. *See* 10 U.S.C. §§ 3848(c), 3851(c), *quoted in* note 8, *supra.* Finally, the same report describes technicians as "full-time civilian employees of the National Guard . . . who must meet all the mental and physical standards as well as professional qualifications prescribed by the military departments." S.Rep.No.1446, 90th Cong., 2d Sess. 1 (1968).

**14.** Age Discrimination in Employment Act Amendments of 1978, Pub.L.No.95–256, § 3(a), 92 Stat. 189 (to be codified as 29 U.S.C. § 631(a)).

**15.** *Id.* (to be codified at 29 U.S.C. § 631(c)).

**16.** *Id.* (to be codified at 29 U.S.C. § 631(d)). This exception is to expire on July 1, 1982. *Id.* § 3(b)(3).

*Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 931 (1936); *accord, Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). The ADEA and Reserve Officer Personnel Act can be reconciled, and effect given to the language and intent of both, by construing the term "personnel actions," as used in the ADEA, narrowly; not as encompassing the claims made in this suit.

■ We conclude that the ADEA does not cover bona fide military personnel actions under the Reserve Officer Personnel Act, even when those actions affect the civilian employment of otherwise covered individuals. Accordingly, summary judgment dismissing the plaintiffs' claims under the ADEA is proper.

## II.

■ The plaintiffs contend that the requirement that a National Guard technician "who is separated from the National Guard . . . shall be promptly separated from his technician employment," 32 U.S.C. § 709(e)(1), denies them the equal protection of the laws because Army Reserve technicians are not subject to a similar requirement.

The Army Reserve, like the Army National Guard, is not a full-time active force. The principal difference between the two is that the National Guard is a state militia, subject (unless called to active federal service) to the control and direction of the Governors of the various states, whereas the Army Reserve is a component of the "land and naval Forces" of the United States, U.S.Const. art. I, § 8, cl. 14, under the command of the President. The Guard, however, can be called to active federal service alongside units of the Regular Army

and the Army Reserve, and by conscious design the organization and operation of the Guard parallels that of the Reserve.

Like the Guard, the Reserve employs civilians to see to its day-to-day administrative, logistic, and training needs. However, although the function and duties of these Army Reserve technicians parallel those of Army National Guard technicians, Reserve technicians do not necessarily lose their technician employment when they are separated from the Reserve. Army Regulation AR 140–315 (1971), entitled "Employment and Utilization of US Army Reserve Technicians," provides that

> "[a]n individual employed as a technician is required to maintain Active Reserve Status in the unit for which he is a technician *unless removal from the Ready Reserve is required for a cogent reason (i. e., maximum age, maximum service, medical unfitness, twice failing of selection for officer promotion, etc.)*"

*Id.* ¶ 8(e)(3) (emphasis added); *see id.* ¶¶ 3(e), 10(b), (d), 12(a), (b). Thus, Reserve technicians, unlike Guard technicians, are not discharged from their civilian employment when they are separated from the Reserve pursuant to the attritive provisions of the Reserve Officer Personnel Act. The plaintiffs contend that this differential treatment violates the Constitution's equal protection guarantee that similarly situated persons be accorded similar treatment.[17]

The plaintiffs do not argue that the government cannot condition their continued civilian employment on continued membership in the Guard, but rather that the government cannot do so unless it also conditions the continued civilian employment of Army Reserve technicians on continued membership in the Reserve.[18] Usually,

---

**17.** "The Constitution does not require that things different in fact be treated in law as though they were the same. But it does require, in its concern for equality, that those who are similarly situated be similarly treated." Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Calif.L.Rev. 341, 344 (1949) (footnote omitted); *see F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64

L.Ed. 989 (1920); *quoted in Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

**18.** The paradigmatic equal protection claim is one of underinclusion: that is, it involves an assertion that the government cannot treat one individual or group as it does unless it accords the same treatment to another individual or group.

equal protection claims are resolved by determining whether or not there is some actual difference between those subject to the challenged government action and those whom they claim should also be subject to it: a difference that justifies differential treatment. Here, however, it appears that the function and duties of National Guard technicians and Army Reserve technicians are the same. Thus, (at least on the present record) it is impossible to justify the different treatment accorded Guard technicians and Reserve technicians on the basis of any actual differences between their roles in their respective organizations.[19]

However, that the roles of Reserve technicians and Guard technicians are indistinguishable does not necessarily mean that they are similarly situated with respect to the government action challenged here.[20] In spite of the similarity or identity of the operation of the two technician programs, their historical antecedents are different, and those antecedents explain the challenged differences in treatment. To the extent that the explanation is rational, it suffices to justify those differences for equal protection purposes, in a case such as this one, where the relevant equal protection standard is one of legislative rationality.[21]

Prior to 1960, the functions now performed by Army Reserve technicians were performed by federal employees in the com-

---

Invocation of the equal protection clause . . . does not disable any governmental body from dealing with the subject at hand. It merely means that the prohibition or regulation must have a broader impact. I regard it as a salutary doctrine that cities, states and the Federal Government must exercise their powers so as not to discriminate between their inhabitants except upon some reasonable differentiation fairly related to the object of regulation. . . . [T]here is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. . . . Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.
*Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 112–13, 69 S.Ct. 463, 466–7, 93 L.Ed. 533 (1949) (Jackson, J., concurring); *see Orr v. Orr*, —— U.S. ——, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). The present case fits the paradigm.

**19.** The defendants argue that Guard technicians and Reserve technicians are not similarly situated because Reserve technicians are members of the competitive civil service whereas Guard technicians are members of the exempt civil service. *See* 5 U.S.C. §§ 2102, 2103. Although this is a relevant consideration, *see* p. 1131, *infra*, it is a difference in treatment, not a difference in "situation" sufficient to justify other differences in treatment.

**20.** *Cf. Vance v. Bradley*, —— U.S. ——, —— n. 27, 99 S.Ct. 939, 945, 59 L.Ed.2d 171 (1979) ("[E]vident congressional conviction that the country should be at great pains to assure the high quality of those occupying positions critical to the conduct of our foreign relations in the post-war world" is a sufficient

justification for treating Foreign Service personnel differently than other civil servants, independent of any actual differences between Foreign Service employment and other federal employment.)

**21.** The plaintiffs do not suggest that the challenged differential treatment accorded Army Reserve technicians and National Guard technicians "burdens a suspect group or a fundamental interest." *Vance v. Bradley*, —— U.S. ——, ——, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979). In such circumstances, a legislative distinction will be upheld if it is " 'rationally related to furthering a legitimate state interest,' " *id.* at ——, 99 S.Ct. at 943 (quoting *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)):

The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Id.; see United States v. Carolene Products Co.*, 304 U.S. 144, 152 & n.4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Under this standard, the challenged provision of the National Guard Technicians Act of 1968 must be upheld if it appears that Congress acted rationally in adopting it. *Id.; see City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam); *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

petitive civil service who were not required to be members of the Reserve. In 1960, the Army sought and secured the approval of the Civil Service Commission to establish the current Reserve technicians program.[22] The formal agreement between the Army and the Civil Service Commission, as revised in 1970, provides that to "enhance readiness of the Army Reserve units for mobilization and combat . . . membership in an active Army Reserve unit (or eligibility and willingness to join the Reserve) shall be a requirement to secure a permanent appointment to a position as a technician."[23] The agreement also provides that "[n]o technician who attains dual status and later loses his Reserve status for reasons outside his control will be involuntarily reassigned or removed."[24] This provision of the agreement was necessary, because, absent legislation removing Reserve technicians from the competitive civil service, they cannot be discharged except "for cause." 5 U.S.C. § 7501.

Prior to 1968, National Guard technicians were not part of the federal civil service system. Under then existing regulations, they were required to be members of the Guard, and lost their civilian employment when separated from the Guard.[25] The primary purpose of the National Guard Technicians Act of 1968 was to establish Guard technicians as federal employees and to provide them with the full panoply of civil service fringe and retirement benefits.[26]

However, in the National Guard Technicians Act, Congress codified the existing requirement that Guard technicians be discharged from their civilian employment when separated from the Guard. To reconcile this requirement with the general requirement that civil servants can be removed only "for cause," Congress placed Guard technicians in the excepted, or noncompetitive, civil service, 32 U.S.C. § 709(d), which is exempt from the "for cause" requirement, see 5 U.S.C. §§ 2102–2103, 7501.[27]

In sum, the differential treatment of Army Reserve technicians and National Guard technicians that the plaintiffs argue violates the equal protection guarantee grows out of the fact that Reserve technicians were originally not required to be Reserve members, and, as members of the competitive civil service, could not be discharged except for cause, whereas Guard technicians were originally required to be Guard members and could be, and were, discharged when separated from the Guard. To determine whether this historical explanation for such differential treatment suffices to justify that treatment under the equal protection clause, two questions must be resolved. First, was it rational, when Congress enacted the National Guard Technicians Act, to adopt the existing requirement that Guard technicians be discharged when separated from the Guard? Second, was it rational to do so without concurrent-

---

**22.** The history of the Army Reserve technician program (and the similar Air Reserve technician program established in 1957) is set forth in *American Federation of Government Employees v. Hoffman*, 178 U.S.App.D.C. 1, 3–6, 543 F.2d 930, 932–35 (1976).

**23.** Agreement Between Department of, the Army and the Civil Service Commission Respecting Army Reserve Technicians ¶ 2 (effective September 1, 1970).

**24.** *Id.* ¶ 7. The agreement continues:
However, the voluntary relinquishment or loss of membership because of unsatisfactory military performance or conduct by a technician who has attained dual status will be a basis for removal from his position. The Department of the Army will encourage and assist non-dual status technicians to transfer out of the technician program and will estab-

lish a program for that purpose. If civilian employees without dual status are not reassigned in this manner and their performance is satisfactory, the Army will wait for normal attrition or turnover to vacate the civilian jobs.
The provisions of this agreement are reflected in Army Regulation AR 140–315 (1971).

**25.** *See* 114 Cong.Rec. 23255 (1968) (remarks of Sen. McIntyre).

**26.** H.R.Rep.No.1823, 90th Cong., 2d Sess. (1968); *reprinted in* 3 [1968] U.S.Code Cong. & Admin.News, pp. 3318, 3319–21; 114 Cong. Rec. 23251 (1968) (remarks of Sen. Stennis).

**27.** *See* 114 Cong.Rec. 23252 (1968) (remarks of Sen. Stennis).

ly establishing a similar requirement for Reserve technicians?

The first question is easily answered. Congress was faced with a policy judgment which required it to balance technicians' interest in job security against the Guard's interest in integrating technicians' civilian and military roles to promote military readiness and effectiveness. The decision reached by Congress can hardly be considered irrational. By continuing an existing practice, Congress minimized the disruptive impact of the new legislation on Guard operations, and maintained existing expectations. More importantly, Congress had the benefit of the Guard's prior experience with the requirement that technicians be discharged when separated from the military, and the opportunity to compare its effects with the effects of the corresponding requirement of the Reserve technicians program.[28] Congress evidently concluded that the existing Guard technician program incorporated the better alternative.

The question remains, however, whether in view of this conclusion it was rational not to adopt, at the same time, a similar requirement for Reserve technicians? The short answer is that "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949). "[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).[29] When the applicable standard of equal protection analysis is that of legislative rationality, those who challenge legislation simply on the grounds that it does not go far enough bear a heavy burden of showing that the legislature acted arbitrarily in limiting the legislation as it did. No such showing has been made here. To the contrary, it is clear that Congress did not act arbitrarily in failing to address itself to the question whether Reserve technicians, too, should be discharged when separated from the Reserve. In matters of this kind, which do not involve "suspect classes" or implicate "fundamental interests,"[30] Congress is entitled to considerable leeway in which to experiment and deploy alternatives, and "the judiciary is well advised to refrain from imposing . . . inflexible constitutional restraints." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 43, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16 (1973).[31]

Finally, the differential treatment challenged here is not the only difference between the Reserve technicians program and the Guard technicians program. In particular, Reserve technicians, as members of the competitive civil service, are subject to civil service requirements that do not apply to

---

**28.** *See, e. g.*, Subcommittee No. 2 Consideration of S. 3865, An Act to Clarify the Status of National Guard Technicians, and for other Purposes (Paper No. 64), Hearings Before the Committee on Armed Services of the House of Representatives, 90th Cong., 2d Sess. 10,179, 10,190 (1968); Subcommittee No. 3 Consideration of H.R. 5083 and H.R. 7325, to Amend Title 10, United States Code, with respect to Reserve Commissioned Officers of the Armed Forces (Paper No. 30), Hearings Before the Committee on Armed Services of the House of Representatives on Sundry Legislation Affecting the Naval and Military Establishments, 86th Cong., 1st Sess. 1975, 2356–70 (1959).

**29.** *Accord, Cleland v. National College of Business*, 435 U.S. 213, 220, 98 S.Ct. 1024, 55 L.Ed.2d 225 (1978) (per curiam) ("[T]he Constitution does not require Congress to detect and correct abuses in the administration of all related programs before acting to combat those experienced in one."); *Califano v. Jobst*, 434 U.S. 47, 57, 98 S.Ct. 95, 1028, 54 L.Ed.2d 228 (1977); *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam); *Katzenbach v. Morgan*, 384 U.S. 641, 656–57, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).

**30.** *See* note 21, *supra*.

**31.** The Department of Defense has proposed legislation that would result in identical treatment of Guard technicians and Reserve technicians by removing Reserve technicians from the competitive civil service, and provide for their discharge from their technician employment upon separation from the Reserve. *See* Exhibit K to Defendants' Motion for Summary Judgment. To date, Congress has not acted on such proposals.

Guard technicians.[32] Each program has its own "package of benefits, requirements, and restrictions serving many different purposes," and it is reasonable to assume that Congress "made its judgments in light of those amalgamations of factors." *Vance v. Bradley,* —— U.S. ——, ——, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

In sum, we find that Congress acted rationally in codifying the pre-existing requirement that Army National Guard technicians be discharged from their civilian employment when separated from the National Guard, or in failing to enact legislation creating a similar requirement for Army Reserve technicians at the same time. Accordingly, the plaintiffs' claim that their discharge from their technician employment denied them the equal protection of the laws must be dismissed.

For the reasons stated, defendants' motion for summary judgment dismissing the complaint in this action is granted.

It is so ordered.

---

**32.** For example, Reserve technicians, as members of the competitive civil service, are selected for employment on the basis of competitive examinations, as prescribed by 5 U.S.C. § 3304. Guard technicians are employed "[u]nder regulations prescribed by the Secretary of the Army." 32 U.S.C. § 709(a).