Luis S. NAVAS, Plaintiff, Appellant,

v.

Luis GONZALEZ VALES, et al., Defendants, Appellees.

No. 84–1501.

United States Court of Appeals, First Circuit.

Heard Oct. 4, 1984.

Decided Jan. 18, 1985.

Carlos Del Valle, San Juan, P.R., with whom Manuel A. Quilichini and Lespier, Munoz Noya & Ramirez, Hato Rey, P.R., were on brief for plaintiff, appellant.

John Rogers, Atty., Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Richard K. Willard, Acting Asst. Atty. Gen., Anthony J. Steinmeyer, Atty., Dept. of Justice, and Major Anthony V. James, Atty., Dept. of the Army, Washington, D.C., were on brief for Federal defendants, appellees.

Gerardo Mariani, Asst. Sol. Gen., San Juan, P.R., with whom Raul Barrera Morales, Acting Sol. Gen., San Juan, P.R., was on brief for defendant, appellee Commonwealth of Puerto Rico.

Before CAMPBELL, Chief Judge, ALDRICH and TIMBERS,* Senior Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff Luis S. Navas Davila appeals from a judgment of the United States District Court for the District of Puerto Rico dismissing Navas's claims challenging his separation from the Puerto Rico National Guard ("PRNG"). 592 F.Supp. 757. The material facts are uncontested.

Navas served with the PRNG for 34 years, the last 26 as a commissioned officer. When this case arose, his continued membership in the Guard had been under annual review pursuant to National Guard

* Of the Second Circuit, sitting by designation.

Regulation ("NGR") 635–102, which requires that a Selective Retention Board ("SRB") convene yearly to consider whether officers and warrant officers with 20 or more years of qualifying service should be retained in the Guard.[1] Navas's mandatory removal date was November 4, 1986.

On February 8, 1983, Navas was advised that an SRB would convene on March 21–22, 1983 to consider his retention in the PRNG. Navas visited the office of Captain Nilda Negron on February 17, 1983 to inspect his personnel files, which were to be submitted to the 1983 SRB. Navas discovered that his Officer Efficiency Reports ("OERs") for the years 1980–81 and 1981–82 were not in his file, notified Captain Nilda Negron of their absence, and was reassured by the Captain that he should not be concerned as the missing OERs were being processed. Navas did not write a letter to the SRB, although the regulations allow an officer to do so to "invit[e] attention to any matter of record concerning himself that he feels important in the review of his records." NGR 635–102, ¶ 9–(e)(2).

The SRB actually convened on March 19–20, 1983. Consistent with NGR 635–102, Navas was not given an opportunity to appear and be heard at the meeting, nor was he advised of the SRB's findings or basis of decision. He was later told, however, that the SRB never had before it the two OERs that Navas had earlier found missing from his personnel file. On April 11, 1983, former Adjutant General of the PRNG, Orlando Llenza, received and approved the SRB's recommendation that Navas not be selected for retention.

On April 13, 1983, Navas was notified of the nonretention decision and was advised that he would be separated from the PRNG

by June 11, 1983. Navas requested reconsideration of the decision on April 29, 1983. Otto J. Reifkohl, Staff Judge Advocate, PRNG, advised Navas on May 11, 1983 that his request for reconsideration "cannot be entertained since it is not provided for in the regulations." On May 16 and 25, Navas again submitted to the Adjutant General, now Luis E. Gonzales Vales, requests for reconsideration. Apparently in an effort to invoke the state administrative remedy provided by the Military Code of Puerto Rico, P.R.Laws Ann. tit. 25, § 2802,[2] Navas also noted in his letter of May 25, 1983 that:

> By copy of this letter to the Honorable Governor of Puerto Rico, Commander in Chief of the Puerto Rico National Guard, I hereby request a simultaneous reconsideration, under the terms outlined previously, should my Request be denied by the Adjutant General.

On May 31, 1983, Gonzales Vales responded that NGR 635–102

> *does not* provide for reconsideration by TAG–PR of your non-selection by the Selective Retention Board of 1983, whose report became final on 11 April 1983 when the then Adjutant General, MG Orlando Llenza, approved the board's report .... In order that you exhaust your administrative remedies, you must request relief from the Army Board for Correction of Military Records, as provided in AR 15–185.

Instead of appealing to the Army Board for Correction of Military Records ("ABCMR") under 10 U.S.C. § 1552,[3] Navas filed suit in the United States District Court for the District of Puerto Rico seeking declaratory and injunctive relief, mandamus, and damages against the Commonwealth and federal governments and certain PRNG officers. Navas claims that (1)

---

1. The statutory and regulatory scheme that defines the role of the state Guard and the operation of the Selective Retention Program is detailed in *Penagaricano v. Llenza,* 747 F.2d 55, 56–57 (1st Cir.1984), and need not be repeated here.

2. Any member of the Military Forces of Puerto Rico[, which includes the PRNG,] who believes himself aggrieved by his commanding officer, and who, upon due application to that

commanding officer, is refused redress, may complain to any superior commanding officer, who shall forward the complaint to the Governor or Adjutant General.
P.R.Laws Ann. tit. 25, § 2802.

3. The ABCMR "may correct any military record ... when ... necessary to correct an error or remove an injustice." 10 U.S.C. § 1552.

his separation from the PRNG was not in conformity with the applicable regulations because the SRB did not have before it his two most recent OERs and this regulatory violation constituted legal error redressable in a court of law; (2) the SRB deprived him of a property interest in continued service with the PRNG until his mandatory removal date without due process, by failing to follow the regulations; and (3) NGR 635–.102 is invalid on its face because it allows the PRNG to deprive Navas and other similarly situated officers of a property interest in continued service without providing minimum due process requirements such as an effective opportunity to confront the evidence against them, a means by which the SRB's determinations can be challenged, or a decision supported by findings.

The parties submitted the matter for resolution through a joint stipulation of facts and exhibits on June 20, 1983. The district court denied Navas's motion for summary judgment and granted appellees' motions to dismiss or for summary judgment, ruling that Navas failed to state a claim upon which relief could be granted and that the issues he raised constituted a nonjusticiable military controversy. We affirm the judgment of the district court.

### I.

■ We turn first to Navas's constitutional claims, summarized as (2) and (3) above. The fatal weakness in both is that, like the guardsman in *Penagaricano*, Navas "does not have a constitutionally protected property interest in continued employment in the Guard ... [, t]hus, no process is due" him. *Penagaricano v. Llenza*, 747 F.2d 55, 62 (1st Cir.1984); *Pauls v. Secretary of the Air Force*, 457 F.2d 294, 297 (1st Cir.1972) ("It is well-established law that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained ...."). Hence neither procedural errors by the SRB nor procedural weaknesses in NGR 635–102 would give rise

here to a deprivation of "property" without due process.

■ Navas asserts that NGR 635–102 creates a mutual expectancy that officers will be retained by the Guard until their mandatory removal date unless separated by an SRB that has complied with all valid regulations. However, the mere fact that the Guard has promulgated procedural rules by which to make retention decisions does not by itself create a constitutionally cognizable property interest in continued employment in the Guard. *See Board of Curators v. Horowitz*, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 92 n. 8, 55 L.Ed.2d 124 (1978) (rule that where agency promulgates regulations affecting rights of individuals it must follow them "enunciate[s] principles of federal administrative law rather than constitutional law ...."); *Bishop v. Wood*, 426 U.S. 341, 344–46, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976). A regulation creates a property interest in a job only if it explicitly or implicitly gives rise to an entitlement to continued employment.

These regulations create no such entitlement. They do not require separation only for cause, nor do they otherwise imply the granting of tenure. *Cf. Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Quite to the contrary, they reflect the concept that because officers with 20 years of service have already qualified for retirement pay, they are to be retained only "selectively," on a year-by-year basis, and that retention decisions are to be based solely on the needs of the PRNG, with only incidental regard for the interests of any particular individual as such. The implication to be drawn from the language of the regulations and the purpose of the Selective Retention Program is one of presumed separation, or at the very least, of continued service solely at the will and pleasure of the Guard. *See Bishop*, 426 U.S. at 345 & n. 8, 96 S.Ct. at 2077 & n. 8. The regulations confer "no right to continued employment but merely condition[ ] an employee's removal on compliance with cer-

tain specified procedures." *Id.* at 345, 96 S.Ct. at 2077 (footnote omitted).[4]

We therefore reject Navas's claims of constitutional deprivation.

## II.

■ Having rejected Navas's two constitutionally based claims, we turn to his contention that the SRB's alleged violation of military regulations, *i.e.*, its failure to consider his two recent OERs, constitutes a violation of law which this court should adjudicate and for which it may grant relief. We hold that the claim is not justiciable.[5]

■ This court recently considered the criteria for determining the reviewability of claims incident to military service in *Penagaricano,* 747 F.2d at 60–61 (adopting test set forth in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971)). First, the plaintiff must allege a violation of the Constitution, a statute or a military regulation, and he must demonstrate that he has exhausted all available intraservice remedies. If these requirements are satisfied, the court must then weigh four factors to determine the advisability of review: (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is denied; (3) the type and degree of interference with the military function; and (4) the extent to which military expertise or discretion is involved. *Id.*

We need not reach the balancing component of the justiciability analysis as Navas failed to satisfy the threshold requirement of exhaustion of intraservice administrative remedies. Navas did not avail himself of the ABCMR's review mechanism even though the Adjutant General notified him that to exhaust his remedies, he had to petition the ABCMR for relief.

Navas seeks to excuse his failure to exhaust by arguing that the ABCMR is an inappropriate forum for resolution of the issues he raises. In particular, he questions the ABCMR's competence to adjudicate his constitutional claims. This issue is moot as we have found Navas's constitutional claims to be without merit. *See* Section I, *supra.* The ABCMR is better equipped than the courts to resolve Navas's only viable claim: that his separation from the PRNG was not in conformity with NGR 635–102 and that the nonretention decision was, therefore, invalid as a matter of administrative law.

This contention involves a number of questions that require for their resolution an evaluation of the content and character of the regulations. Specifically, the parties differ over whether the regulations require SRBs to have before them all relevant OERs. Even if it is found that the regulations contain such a requirement, it remains to be decided whether the regulations are designed to protect the rights of the individuals under consideration and thus must be followed closely, *see Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); *Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1156, 1 L.Ed.2d 1403 (1957), or are merely procedural rules for internal guidance that need not be so strictly enforced. *See American Farm Lines v. Black Ball,* 397 U.S. 532, 538–39, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970); *United States v. Horne,* 714 F.2d 206 (1st Cir.1983). Finally, there is the question of whether the SRB's error, if it was such, was harmless.

All these questions are better addressed by the ABCMR. It has far greater experience than this court in deciphering the content and effect of military regulations and should be permitted to exercise its exper-

---

4. Navas does not claim that special circumstances exist in his case that give him a unique entitlement to continued employment with the Guard. *Cf. NeSmith v. Fulton,* 615 F.2d 196, 200 (5th Cir.1980); *Bollen v. National Guard Bureau,* 449 F.Supp. 343 (W.D.Pa.1978).

5. Ordinarily we would consider the issue of justiciability before reviewing, as we have just done, *supra,* the merits of related claims. However, Navas's constitutional claims are so clearly insubstantial that we feel justified in disposing of them first. This simplifies our discussion of the justiciability of the remaining claim.

tise. Additionally, the issue of whether the asserted error was harmless is one that involves a review of the merits of the SRB's decision, *i.e.*, a determination of whether this military tribunal's decision was in error or unjust. This is a task for which the ABCMR was created.

Navas also claims that because the ABCMR cannot give him complete relief, he should not be required to appeal to that board before pursuing judicial remedies. The ABCMR cannot compel the Puerto Rico National Guard to reinstate Navas, but it can correct Navas's record to show that he is eligible for reinstatement into the PRNG. The ABCMR is also empowered to provide Navas with substantial relief by reinstating him in active federal reserve status and ordering the payment of all pay and allowances lost as a consequence of a wrongful separation. *Penagaricano*, 747 F.2d at 57. With regard to reinstatement in the PRNG, we are aware that Navas may be unable to renew his appeal to the Adjutant General or the Governor of Puerto Rico under P.R.Laws Ann. tit. 25, § 2802, because he is no longer a "member of the Military Forces of Puerto Rico." *Id.* Even if this state administrative remedy is unavailable as of right, however, it seems likely that the PRNG would initiate a reconsideration of Navas's nonretention if the ABCMR were to issue a definitive interpretation of Army regulations holding that the absence of the OERs violated regulations affecting Navas's rights and was not harmless error. If the ABCMR were to find in Navas's favor, but the PRNG were to refuse to give his case further attention, Navas might (although we do not now decide the matter) be able to demonstrate a sufficiently compelling need for a court to undertake review of his claim under the *Mindes* formula. *See Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971); *see also Penagaricano*, 747 F.2d at 60–61. If this eventuality were to come about, the court would benefit greatly from having before it the Army's interpretation of its own regulations.

■ Finally, Navas argues that he should not be compelled to seek relief from the ABCMR because the regulations do not contemplate review by the board. The short answer to this argument is that 10 U.S.C. § 1552 is a generally available remedy, of which Navas was informed if he was not already aware, and is available to "correct *any* military record ... when ... necessary to correct an error or remove an injustice." (Emphasis added.) The fact that the regulations do not make specific mention of the availability of ABCMR review does not affect Navas's ability or duty to seek relief under 10 U.S.C. § 1552.

Our decision today is consonant with the general rule that "military personnel with grievances against the military establishment or its personnel must exhaust the administrative remedies provided by the military service before seeking relief in civilian courts." *Penagaricano*, 747 F.2d at 61; *Rivera-Rodriguez v. Commanding Officer*, 596 F.2d 508 (1st Cir.1979) (affirming district court dismissal of PRNG member's suit for failure to exhaust administrative remedies); *United States v. Sweet*, 499 F.2d 259, 262 (1st Cir.1974); *Emma v. Armstrong*, 473 F.2d 656 (1st Cir.), *cert. denied*, 414 U.S. 870, 94 S.Ct. 87, 38 L.Ed.2d 88 (1973); *see also Horn v. Schlesinger*, 514 F.2d 549 (8th Cir.1975); *Hodges v. Callaway*, 499 F.2d 417 (5th Cir.1974). As the *Hodges* court noted, where the gravamen of the complaint is that the service did not follow its regulations in arriving at the contested decision

whether this is viewed as a legal or a factual question, the Army ought to be the primary authority for the interpretion of its own regulations. A decision by the ABCMR that the Army should have followed [the regulation at issue] might completely obviate the need for judicial review. If on the other hand, the ABCMR concludes that [the regulation at issue] is inapplicable to the facts of this case and [the plaintiff serviceman] then seeks judicial review, the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest adminis-

trative body in the Army's own appellate system. *See Nelson v. Miller*, 3 Cir., 373 F.2d 474, 480, cert. denied, 1967, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980; *Sohm v. Fowler*, 1966, 124 U.S.App.D.C. 382, 365 F.2d 915, 918–919.

499 F.2d at 422. In this case there is no reason to make an exception to the general rule mandating exhaustion. Accordingly, we hold Navas's regulatory claim to be a nonjusticiable military matter as he failed to exhaust his intraservice administrative remedies.

*Affirmed.*