**Alfred P. CHRISTOFFERSEN; William J. Gibson; Richard F. Main; and John R. Warn, Plaintiffs–Appellants,**

v.

**WASHINGTON STATE AIR NATIONAL GUARD; The Adjutant General of Washington State, Major General George Coates; Major General Robert J. Collins; The Washington State Treasurer, Robert S. O'Brien, Defendants–Appellees.**

No. 85–4315.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1986.

Decided Aug. 31, 1988.

**1438**

---

Charles Matthew Anderson, Winston & Cashatt, Spokane, Wash., for plaintiffs-appellants.

John E. Lamp, U.S. Atty., and James R. Shively, Asst. U.S. Atty., Spokane, Wash., Lt. Col. Guy J. Sternal, Staff Judge Advocate, USAF, McCord AFB, Washington, D.C.; Ceil Holuk, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees.

Before POOLE, NORRIS and BEEZER, Circuit Judges.

POOLE, Circuit Judge:

Appellants are four former officers and civilian technicians of the Washington State Air National Guard (the Guard, or Washington Guard) who were selected for "nonretention" in the Guard by state Adjutant General Robert Collins pursuant to Air National Guard Regulation (ANGR) 36–06. They were subsequently terminated as federal civil servants. Appellants brought this action under 42 U.S.C. § 1983 against General Collins and the Guard claiming that the decisions not to retain them were based on personal animus and violated their rights to freedom of speech and procedural due process. Appellants also argued that ANGR 36–06 is not authorized by statute, was improperly promulgated, and denies them due process and equal protection. Pursuant to a court order, appellants joined the United States, the Department of Defense, the Department of the Air Force, and the National Guard Bureau (collectively "federal appellees") to answer the challenge to the regulations.

The district court granted summary judgment in favor of General Collins and the Guard, holding that *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), precludes a suit for damages against a military commander and that appellants' claims are also barred by the military non-interference doctrine. After the federal appellees were joined, the district court also granted summary judgment in their favor, rejecting appellants' challenges to the regulation. We affirm.

### FACTS

Each appellant had a dual status as an officer of the Guard and as a federal civilian technician. By statute, each was required to maintain membership in the Guard as a condition for retaining his civil service position. 32 U.S.C. § 709(b). Each appellant had completed over 20 years of military service in July 1978, and therefore had qualified for a military retirement pension at age 60. 10 U.S.C. § 1331(a).

Under ANGR 36–06, ¶ 2, all Air National Guard officers with over 20 years of qualifying military service must be reviewed annually for consideration of retention in, or separation from, their state National Guard. This regulation was developed by the National Guard Bureau, an organization which serves as the channel of communication between the Department of De-

fense and the various state National Guards, 10 U.S.C. § 3040, and was issued by order of the Secretary of the Air Force. The regulation establishes a "Vitalization Program" for the state National Guards which is designed to ensure combat readiness and inhibit stagnation in the senior grades by providing for the advancement of qualified young officers into positions of greater responsibility. ANGR 36–06, ¶ 2; *see Penagaricano v. Llenza*, 747 F.2d 55, 56 (1st Cir.1984).

Under the Vitalization Program, an Advisory Board appointed by the state Adjutant General annually reviews every eligible officer to "evaluat[e] the future benefits that can be expected to accrue to the Air National Guard from [his] continued service." ANGR 36–06, ¶ 10d; *see id.* ¶ 2a. The regulation lists a number of criteria, related both to the qualifications of the individual and the needs of the Air National Guard, to be considered by the Advisory Board in recommending retention or separation of each officer. *Id.* ¶ 10e. One factor is the officer's status with regard to technician retirement eligibility. *Id.* ¶ 10e(4). The state Adjutant General is not bound by recommendations of the Advisory Board and may approve or disapprove any specific recommendation. *Id.* § 11b(1).

The gravamen of appellants' complaint is that they were the victims of a vindictive discharge motivated by their participation in the so-called "human reliability incident." According to appellants, appellant Main, who was then the immediate commander in charge of implementing a nuclear weapons safety program known as the Human Reliability Program, decided upon a temporary disqualification from nuclear missions of two officers whom he suspected of drug trafficking. Notice of this action was prepared by Main, but not forwarded by the Guard to the Air Defense Command (ADC) as required. When Main resisted attempts by Washington Guard Headquarters to have him change his mind, Collins was installed as Main's Squadron Commander. Collins assigned himself to Main's position as immediate commander, but ADC countermanded the assignment because Collins was not a federal employ-

ee. The Guard then ordered Main to restore the disqualified officers to flight duty with make-up time for lost flight hours.

Meanwhile, ADC was unaware of Main's temporary disqualification of the two officers. On March 22, 1974, Main and his assistant, appellant Christoffersen, told an ADC Inspector General of the officers' disqualification and of the Washington Guard's efforts to compel their reinstatement. On March 24, 1974, all nuclear weapons within Washington State were removed from Washington Guard control. On April 20, 1974, all nuclear missions were removed from National Guard units nationwide.

The Guard ordered investigations of the actions taken by Main and Christoffersen regarding the officers' disqualification. Appellant John Warn sat on the investigatory boards which sustained Main and Christoffersen. Appellant William Gibson, Unit Commander, supported Main and Christoffersen, and gave them outstanding ratings.

In 1978, an Advisory Board convened to evaluate officers in the Washington Guard and specifically selected each appellant for retention. However, General Collins, now Adjutant General of the Guard, as the reviewing officer, declined to adopt the Advisory Board's recommendations and, instead, approved nonretention of all appellants. As a result of Collins' action, the National Guard Bureau withdrew federal recognition from them and each appellant lost his civilian federal technician position. 32 U.S.C. § 709(e); ANGR 36–06, ¶¶ 11b(2), 11c(1). Appellants were discharged from the Washington Guard upon withdrawal of their federal recognition and were transferred to the inactive United States Air Force Reserve. 10 U.S.C. § 8352(b); ANGR 36–06, ¶ 11c. They were advised in writing that Collins' decisions were nonreviewable.

Collins gave no reasons for nonretention, but later acknowledged that appellants' performance as technicians was not a consideration. Appellants believe Collins was motivated by personal vindictiveness based on the human reliability incident that oc-

curred before he was appointed state Adjutant General.

## PROCEEDINGS BELOW

Appellants originally sued in the United States Court of Claims for reinstatement, back pay, benefits, and other damages based on their wrongful termination as civilian technicians. The court granted summary judgment for the United States holding that, because Guardsmen not in active federal service are state employees, appellants failed to state a claim on which relief could be granted. *Christoffersen v. United States,* 230 Ct.Cl. 998 (1982).

Appellants then pursued their claims in the district court under 42 U.S.C. § 1983 against the Washington Guard and Collins. Appellants alleged that they were "involuntarily retired" in violation of their rights under the First Amendment and to procedural due process. Appellants also challenged the validity of ANGR 36–06. On March 31, 1984, the district court granted the state appellees' motion for summary judgment on the issue of liability under section 1983. However, the court refused to dismiss the action and directed appellants to join whatever federal parties would be necessary to resolve the challenges to ANGR 36–06. Accordingly, the federal appellees were joined. On October 11, 1985, after additional discovery, the district court granted the government's motion for summary judgment, ruling that ANGR 36–06 had been properly promulgated and applied. This appeal followed. We heard oral argument on August 7, 1986. On December 2, 1986, submission of this case was vacated, and we ordered all parties to submit supplemental briefs focusing on two questions: (1) whether the appellants' participation in the so-called "human reliability incident" involved the exercise of public authority, as distinguished from "whistleblowing;" and (2) the extent to which the First Amendment protects, as speech, the exercise of public authority by a government official. The parties made their submissions which we considered. On January 5, 1987 we ordered the case resubmitted, and we now affirm the judgments of the district court.

## DISCUSSION

A district court order granting summary judgment is reviewed *de novo. Sebra v. Neville,* 801 F.2d 1135, 1138 (9th Cir.1986). This court need only decide whether there are genuine issues of material fact, whether the substantive law was properly applied, and whether the proponents of the motion were entitled to judgment. *Id.*

### I.

In determining whether a civilian court should review a serviceman's allegation of deprivation of constitutional rights by the military, this Circuit has adopted the multifactored analysis first outlined in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971). *Sebra v. Neville, supra,* 801 F.2d at 1141; *Khalsa v. Weinberger,* 779 F.2d 1393, 1396 (9th Cir.), *reaff'd,* 787 F.2d 1288 (1986); *Helm v. California,* 722 F.2d 507, 509 (9th Cir.1983); *Gonzalez v. Department of the Army,* 718 F.2d 926, 929 (9th Cir.1983); *Wallace v. Chappell,* 661 F.2d 729, 732–33 (9th Cir.1981), *rev'd on other grounds,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). The *Mindes* test has been adopted by seven other federal circuits. *See Khalsa,* 787 F.2d at 1289 n. 1.

Appellees argue that the *Mindes* test is not applicable to this case because judicial review of appellants' section 1983 claims is barred by *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 761 F.2d 586 (1983), *rev'g* 661 F.2d 729 (9th Cir.1981). In *Chappell,* five enlisted men in the United States Navy brought an action for damages and declaratory and injunctive relief against their superior officers. The complaint alleged that in making duty assignments, submitting performance evaluations, and imposing penalties, the officers had discriminated against the enlisted men on the basis of race in violation of their constitutional rights. The complaint also alleged a conspiracy to deprive the enlisted men of equal protection in violation of 42 U.S.C. § 1985(3).

The Court examined the enlisted men's direct constitutional claims to determine whether they stated a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), considering that "[b]efore a *Bivens* remedy may be fashioned ... a court must take into account any 'special factors counselling hesitation.'" *Chappell,* 462 U.S. at 298, 103 S.Ct. at 2365. In finding that it would be inappropriate to allow enlisted personnel to recover damages for alleged constitutional violations by their superiors, two "special factors" were determinative: "the unique disciplinary structure of the Military Establishment and Congress' activity in the field." *Id.* at 304, 103 S.Ct. at 2368.

*Chappell's* holding is that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Id.* at 305, 103 S.Ct. at 2368; *Mollnow v. Carlton,* 716 F.2d 627, 629–30 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). However, the Court did not address the alleged statutory violations, but remanded the case to this court to determine whether the claims for relief under 42 U.S.C. § 1985(3) might be judicially cognizable. *Chappell,* 462 U.S. at 305 n. 3, 103 S.Ct. at 2368 n. 3. Implicit in the remand order is the recognition that, in some situations, military personnel "may assert that their constitutional and statutory rights have been violated by their superiors." *Gonzalez,* 718 F.2d at 929.

We do not find *Chappell* controlling here. *See Penagaricano,* 747 F.2d at 59; *Mollnow,* 716 F.2d at 631. In *Chappell* the Court was unwilling to extend a judicially created damages remedy to suits against military personnel for alleged constitutional violations. However, the Court's rationale has left the field open for Congress to enact legislation authorizing servicemen's constitutional claims against their superiors. *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367; *Mollnow,* 716 F.2d at 631. The issue before us is whether appellants' claims under 42 U.S.C. § 1983 to reinstatement and damages are justiciable given the special characteristics of the military setting. We need not decide whether *Chappell* bars any or all section 1983 claims for alleged civil rights violations by military personnel. *But see Martelon v. Temple,* 747 F.2d 1348, 1351 (10th Cir.1984) (by enacting section 1983, Congress did not intend to create liability on the part of military superiors for transgressions against the rights of other military personnel), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985). Even assuming that *Chappell* does not bar section 1983 actions by military personnel, we find the particular claims raised by appellants are nonreviewable.

## II.

Appellants argue that the *Mindes* test, reflecting only limited reviewability of certain military decisions, should be applied only where the importance of military decision-making autonomy is apparent and an adequate alternative dispute resolution mechanism exists. Appellants claim that deferential review is inappropriate in this case because the Washington Guard is a state agency not in active military service. In addition, they assert that no intraservice remedy, analogous to the military justice system, exists for resolution of their claims.

■ Appellants' arguments are unpersuasive. The Washington Guard is a state agency, but it is also part of the organized militia of the United States, 10 U.S.C. § 101(12), and may be called to active service at any time. 10 U.S.C. § 8500. The availability of an intraservice remedy is one factor to be considered in the justiciability equation, but the alleged absence of such a remedy does not preclude application of the *Mindes* test. *See Mollnow,* 716 F.2d at 629 (the Supreme Court discussed the availability of intraservice remedies in *Chappell,* but did not suggest that an inadequate remedy would change its result). Moreover, in *Sebra v. Neville, supra,* 801 F.2d at 1141, we specifically held that the *Mindes* test is the appropriate standard to determine whether claims brought by National Guard technicians are reviewable.

*Accord Penagaricano,* 747 F.2d at 61–64; *NeSmith v. Fulton,* 615 F.2d 196, 201–03 (5th Cir.1980).

As modified by this Circuit, the *Mindes* test declares that:

an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of [a recognized constitutional right], a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the trial court must weigh four factors to determine whether review should be granted:

(1) *The nature and strength of the plaintiff's claim....*

(2) *The potential injury to the plaintiff if review is refused.*

(3) *The extent of interference with military functions.*

(4) *The extent to which military discretion or expertise is involved.*

*Khalsa,* 779 F.2d at 1398 (*quoting Wallace v. Chappell,* 661 F.2d at 732–33) (emphasis in original); *see also Sandidge v. Washington,* 813 F.2d 1025, 1026 (9th Cir.1987); *Sebra,* 801 F.2d at 1141.

As to the first phase of this analysis, appellants do allege violations of recognized constitutional rights. Appellants also argue that they have satisfied the exhaustion requirement because no intraservice remedy is available. ANGR 36–06 does not provide a means for a rejected officer to obtain review of an Adjutant General's nonretention decision, *see Penagaricano,* 747 F.2d at 57, and appellants contend that there is no remedy available under the laws of Washington State. However, it appears that appellants could have sought relief from the Air Force Board for Correction of Military Records under 10 U.S.C. § 1552. *See Navas v. Gonzalez Vales,* 752 F.2d 765, 769–70 (1st Cir.1985); *Penagaricano,* 747 F.2d at 57; *see also Chappell,* 462 U.S. at 303 (Court identified Board for Correction of Naval Records as an intraservice administrative remedy for aggrieved enlisted men). If the Records Board determines that an officer's nonretention was the consequence of error or injustice, it can correct federal records to show that federal recog-

nition has not been withdrawn and can reinstate the officer in a comparable active federal reserve status, restore his pay, and order compensatory back pay. *Penagaricano,* 747 F.2d at 57.

■ The parties have not made an issue of the availability of review by the Records Board, which has no power to force Washington to reinstate appellants in the Washington Guard. *See id.* Appellees suggest that if appellants had obtained a definitive interpretation of ANGR 36–06 in their favor from the Records Board, the Washington Guard might have reinstated them as a matter of comity. *See Navas,* 752 F.2d at 770. However, there is no evidence to support this contention. Given that the Records Board could not provide effective relief against the state appellees, we will assume that appellants have exhausted all available remedies and address the four factors required by the second phase of the *Mindes* test. On balance these factors favor finding appellants' claims non-reviewable.

■ We first must assess the nature and strength of appellants' constitutional claims. According to appellants, Collins violated their First Amendment right to free speech because he terminated them for "whistleblowing," that is, speaking out regarding a violation of federal regulations governing nuclear weapons safety. Following a careful review of the record and supplemental briefing ordered in this case, we are constrained to disagree. As the immediate commander in charge of implementing the Human Reliability Program, Main had military authority to temporarily disqualify the two officers. His preparation of notice to the ADC was simply the means of effectuating his exercise of that authority. The statements made by Main and Christoffersen during their meeting with the ADC Inspector General were designed to replace the unforwarded notice and effectuate Main's exercise of military authority by thwarting the Washington Guard's attempts to reinstate the disqualified officers. Similarly, Warn's actions as an investigatory board member, and Gibson's actions as unit commander and offi-

cer evaluator, consisted of nothing more than the exercise of military authority. The appellants' exercise of their military authority, even though accomplished through the use of words, does not constitute "whistleblowing."

Appellants contend that, even if they merely exercised their military authority, such exercise was constitutionally protected. They assert that the appropriate test of First Amendment protection requires a balancing of "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983) (*quoting Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). Whether speech is constitutionally protected is an issue of law. *Id.* at 148 n. 7, 103 S.Ct. at 1690 n. 7.

We may assume, without deciding, that the *Connick* test applies to appellants' exercise of military authority in which they addressed a matter of public concern, i.e., nuclear weapons safety. We nonetheless hold that whatever First Amendment interests are implicated by this exercise are outweighed by Washington State's strong interest in promoting the efficiency of the military services it provides through the Washington Guard. The ability of the Washington Guard to make even routine personnel decisions would be severely impaired if we were to hold otherwise. *See McAdams v. Matagorda County Appraisal District*, 798 F.2d 842, 848 (5th Cir. 1986).

Appellants also assert that their termination from the Washington Guard deprived them of a protected entitlement to continued employment as civilian technicians without procedural due process. Appellants claim that their expectancy is based upon the National Guard Technicians Act and its legislative history. Pub.L. No. 90–486, 82 Stat. 755 (1968). The Act specifically allows the Secretary of the Air Force to exempt technicians in the Air National Guard from the mandatory effect of Air Force retirement laws until age 60, thereby allowing technicians to receive maximum retirement benefits. Pub.L. No. 90–486, § 9(2) (codified at 10 U.S.C. §§ 8848(c), 8851(c)). Appellants also base their expectancy on a written National Guard Bureau policy to retain technicians to age 55, and on National Guard custom.

■ Appellants' argument that Collins violated their right to procedural due process is without merit because they have no constitutionally protected property interest in continued employment with the Washington Guard. *See Navas*, 752 F.2d at 768; *Penagaricano*, 747 F.2d at 62; *Walker v. Alexander*, 569 F.2d 291, 294 (5th Cir. 1978). Moreover, appellants lost any protected interest in their civilian technician positions when their military membership in the National Guard ended. *See Tennessee v. Dunlap*, 426 U.S. 312, 316, 96 S.Ct. 2099, 2101, 48 L.Ed.2d 660 (1976). Appellants' reliance on the National Guard Technicians Act, which simply allows but does not require the retention of qualified technicians, is misplaced. The Act is directed to the Secretary of the Air Force and does not purport to limit the role of state National Guards in making retirement decisions. *See* 10 U.S.C. §§ 8848(c), 8851(c). Similarly, the fact that ANGR 36–06 directs an Advisory Board to consider an officer's status as a civilian technician in making a recommendation to the Adjutant General does not support appellants' due process claim. *See Navas*, 752 F.2d at 768 (regulation only creates a property interest if it explicitly or implicitly gives rise to an entitlement to continued employment).

Because both of appellants' constitutional claims are meritless, we conclude that the first *Mindes* factor does not favor reviewability of Collins' nonretention decisions.

The second factor to be considered is the potential injury to appellants if review is denied. As a result of their nonretention in the Washington Guard, appellants have lost both military and civilian employment. Christoffersen and Main have lost their eligibility for civil service retirement bene-

fits, and Warn and Gibson will not qualify for full amount of civil service benefits they would have received if allowed to serve until age 55. However, each appellant is qualified for a military retirement pension at age 60. The potential injury to appellants is primarily economic. *See Helm,* 722 F.2d at 510.

If this court refuses review, appellants still will be able to seek review before the Air Force Board for Correction of Military Records under 10 U.S.C. § 1552. If proper grounds for relief were presented, the Records Board could reinstate each appellant in active federal reserve status, restore his pay, and order back pay. *Penagaricano,* 747 F.2d at 57. However, although the refusal of judicial review would not leave appellants without a remedy, we recognize that the Records Board could not provide any relief with respect to the state appellees. Thus the second *Mindes* factor tips, but not strongly, in appellants' favor. *See id.* at 62.

The third and fourth factors to be considered are the extent of interference with military functions and the extent to which military discretion or expertise is involved. To permit judicial review of the internal military decisions at issue here would seriously impede the military in performance of its vital duties. *Penagaricano,* 747 F.2d at 63; *Turner v. Egan,* 358 F.Supp. 560, 564 (D.Alaska) (three judge district court), *aff'd mem.* 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Military authorities have been charged by the Executive and Legislative Branches with carrying out our Nation's military policy, *Goldman v. Weinberger,* 475 U.S. 503, 508, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986), including the Vitalization Program, which is essential to maintain a high capability of the National Guard. *Turner,* 358 F.Supp. at 564. If courts were routinely to entertain complaints like appellants' the Vitalization Program could be significantly impaired. *Penagaricano,* 747 F.2d at 62. Claims challenging retention decisions in civilian court could force the Washington Guard to "exist in limbo awaiting the outcome of lengthy litigation, rather than conducting an orderly training program directed to sharpening

its operational readiness." *Id.* at 62–63 (*quoting Turner,* 358 F.Supp. at 564). Judicial review could also impair the ability of the National Guard to make retention decisions based on subjective, though appropriate, criteria of military efficiency. *Id.* at 63. We have previously noted that particular caution is required when we are asked to review "military transfer decisions [which] go to the core of deployment of troops and overall strategies of preparedness." *Sebra,* 801 F.2d at 1142. This admonition carries even greater force with respect to retention decisions. *See Dilley v. Alexander,* 603 F.2d 914, 919 (D.C.Cir. 1979) (deference to military discretion is at its height when personnel decisions such as discharge are challenged), *clarified,* 627 F.2d 407 (1980); *accord Penagaricano,* 747 F.2d at 63; *Pauls v. Secretary of Air Force,* 457 F.2d 294 (1st Cir.1972); *Johnson v. Orr,* 617 F.Supp. 170, 172 (E.D.Cal. 1985), *aff'd mem.* 787 F.2d 597 (9th Cir. 1986); *benShalom v. Secretary of Army,* 489 F.Supp. 964, 971 (E.D.Wis.1980).

Appellants argue that Adjutant General Collins acted arbitrarily because he ignored the Advisory Board's recommendation that appellants be retained in the Washington Guard. While there might be merit to this claim, we disagree with appellants' argument that the challenged nonretention decisions do not require a high degree of military discretion and expertise. *Penagaricano,* 747 F.2d at 63. As a practical matter there is no way that judicial review could be limited to consideration of appellants' First Amendment claim. The district court could not reach a judgment without exposing itself to all the pros and cons of the nonretention decisions. *Id.* Collins and the officers who participated on the Advisory Board would have to be examined to determine the grounds and motives for their actions. *See Sandidge,* 813 F.2d at 1027; *Gonzalez,* 718 F.2d at 930. However, ANGR 36–06 gives these military personnel essentially unlimited discretion in making nonretention decisions. The regulation clearly requires the Advisory Board and Adjutant General to apply their expertise regarding projected Washington Guard

needs and present capabilities. *See* ANGR 36–06, ¶ 10e. "[C]ourts must give great deference to the professional judgment of military authorities." *Goldman*, 475 U.S. at 507, 106 S.Ct. at 1313. Thus the third and fourth *Mindes* factors weigh heavily against review of the challenged nonretention decisions.

On balance, then, we conclude the *Mindes* factors weigh against reviewability of appellants' constitutional claims.

## III.

Appellants challenge ANGR 36–06 on numerous grounds. They argue that the regulation (1) lacks legal authority and conflicts with the National Guard Technicians Act, (2) was improperly issued, and (3) denied them due process and equal protection. None of these arguments has merit.

### A. *Legal Basis for ANGR 36–06*

Appellants argue that ANGR 36–06 is illegal because no federal statute authorizes the Vitalization Program developed by the National Guard Bureau. They also argue, somewhat inconsistently, that a federal regulation cannot be used to terminate a Guardsman commissioned under state law.

■ Congress' authority over the military extends to the National Guard, *see* U.S. Const. art. I. § 8, cl. 16, and Congress has authorized the Secretary of the Air Force to regulate the Air National Guard. 10 U.S.C. § 8077. Based on these constitutional and statutory provisions, we reject appellants' arguments that ANGR 36–06 is not authorized and that a federal regulation cannot be applied to officers in a state National Guard.

Appellants also claim that ANGR 36–06 conflicts with the National Guard Technicians Act, which exempts technicians from Air Force retirement laws. *See* 10 U.S.C. §§ 8848(c), 8851(c). This argument must be rejected for the reasons discussed earlier: the Act permits, but does not require, retention of technicians, and does not limit the authority of state National Guards to make retirement decisions.

### B. *ANGR Was Properly Issued*

■ Relying on the National Guard Technicians Act, appellants argue the Secretary of Defense was required to approve ANGR 36–06. *See* Pub.L. No. 90–486, § 10, 82 Stat. 755 (1968). The problem with this argument is that the regulation was not issued under the National Guard Technicians Act. ANGR 36–06 is a military personnel regulation, not a technician regulation. The class of military personnel affected by the regulation is much broader than the subclass of technicians. Therefore, approval by the Secretary of Defense was not required.

■ Appellants argue that even if the Secretary of the Air Force could approve ANGR 36–06, he did not do so. Appellants claim that only two officers of the Air Staff reviewed the proposed regulation, and that these officers submitted comments to the National Guard Bureau, but did not specifically concur.

Appellants' argument that the Secretary of the Air Force could not delegate authority to approve the regulation to the Air Staff must be rejected. *See* 10 U.S.C. §§ 8013(f), 8032. Moreover, the record shows that the Air Staff properly concurred prior to issuance of ANGR 36–06. Standard Air Force practice is that a concurrence may be made with or without comments, but that a nonconcurrence must be expressly stated. Therefore, the comments submitted by the Air Staff officers on the proposed regulation, which do not explicitly withhold approval, constitute concurrences.

### C. *Due Process and Equal Protection*

Appellants argue that ANGR 36–06 violates due process because they were deprived of a protected property interest without an opportunity to challenge the actions of the state Adjutant General.

This argument must be rejected because, as discussed earlier, appellants had no right to continued employment in the Washington Guard or as civilian technicians. *See Tennessee v. Dunlap,* 426 U.S. at 316, 96 S.Ct. at 2101; *Navas,* 752 F.2d at 768; *Penagaricano,* 747 F.2d at 62; *Walker,* 569 F.2d at 294.

Appellants' equal protection argument is based on an alleged difference between the Vitalization Program regulations covering the Air and Army National Guards. According to appellants, under the Army National Guard regulation, NGR 635–102, an officer favorably reviewed by an Advisory Board cannot be discharged by the Adjutant General. In contrast, ANGR 36–06 allowed Collins to ignore the Advisory Board's recommendations that each appellant be retained in the Washington Guard.

Appellants' equal protection challenge to ANGR 36–06 must be rejected. Appellants rely on the affidavit of a former state Assistant Adjutant General and Brigadier General in the Washington Army National Guard to describe the Army National Guard's Vitalization Program. However, the record shows that the regulations covering the Army and Air National Guards were identical at all times relevant to this litigation. The Army National Guard Regulation was not changed until December 31, 1979, to prevent an Adjutant General from overturning an Advisory Board's recommendation to retain a particular officer. *Compare* NGR 635–102 ¶ 6 (Sept. 28, 1973), *with* NGR 635–102 ¶ 6i(1) (March 22, 1982).

AFFIRMED.